NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY LAFORGIA, | : |
| Plaintiff, | : **OPINION** |
| v. | : Civil Action No. 04-3403 (WHW) |
| APM TERMINALS NORTH AMERICA/MAERSK, INC., | : |
| Defendant. | : |

**Walls, Senior District Judge**

Defendant moves for summary judgment. The motion is denied.

**FACTS AND PROCEDURAL BACKGROUND**

Defendant APM Terminals North America ("APM"), a subsidiary of Maersk, Inc. ("Maersk"), fired plaintiff Anthony LaForgia for "gross insubordination and inappropriate conduct in violation of company policy . . . in combination with [a] past disciplinary record." Plaintiff argues that this explanation is merely pretext and that he was actually terminated for exposing fraudulent conduct at the company. Plaintiff contends that this retaliatory termination violates New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq.

Originally hired by Maersk subsidiary Universal Maritime Services Corp. ("Universal") in April 1995, plaintiff began working at APM's Port Elizabeth facility around April 2000, as a result of a merger between Maersk and Sealand. Plaintiff was employed as a Vessel Superintendent/Assistant Marine Manager. The primary function of this position was to

**NOT FOR PUBLICATION**

supervise the loading and unloading of containers from cargo ships, ensuring proper safety and documentation. In July 2000, plaintiff was promoted to General Manager. Although he continued to work from the Port Elizabeth facility, he became responsible for administrative duties, real estate transactions, and other functions at APM's east coast facilities.

  Following a determination that he had violated the company's sexual harassment policy, plaintiff was demoted to Yard Superintendent in July 2001. The demotion letter informed plaintiff to "consider this disciplinary action as a final warning. Should you engage in any similar conduct in the future, or should you violate any other Company policy, you will be subject to immediate termination." Plaintiff later returned to his original position with the company as an Assistant Marine Manager. On March 3, 2003, plaintiff was given a warning for non-compliance with OSHA and corporate safety requirements for not wearing a hard hat. The memorandum to LaForgia noted that his "failure to comply to the most basic of safety practices, the wearing of a hard hat, after being instructed by senior terminal management one day, and discounting it the next, borders on insubordination. . . . Failure to comply with, or enforce, these requirements in the future may involve immediate suspension without pay, or termination from employment." On August 13, 2003, a meeting was held in which plaintiff was again warned about safety violations for wearing sandals to work and was also criticized for certain deficiencies in his work product. At the meeting, and in accordance with his long-held belief, plaintiff criticized APM's leadership at the Port Elizabeth terminal for singling out former Maersk/Universal employees for disparate treatment. LaForgia received a follow-up "warning email," which noted that, during the meeting, comments he made about "senior management

**NOT FOR PUBLICATION**

were unprofessional, unfounded and bordering on insubordination." The email concluded that, "[a]s indicated in past disciplinary actions, any future failure by you to comply with the existing corporate policies may result in further disciplinary actions, up to and including termination."

Turning to plaintiff's allegations, "[c]ommencing in about June of 2003,"

> plaintiff was instructed by his supervisors, General Manager Marine Bill Peratt ("Peratt") and Shift Manager Terence Dickerson ("Dickerson"), on the average of once or twice a week, to alter the arrival times of cargo ships being serviced by International Longshoremen Association ("ILA") workers under the supervision of defendant APM Terminals/Maersk Inc. and/or to increase the recorded time for ILA workers under the supervision of defendant APM Terminals North America/Maersk Inc. handling out of gauge cargo beyond that actually required.

(Compl. ¶ 8.) Plaintiff suspected "that such conduct constituted a fraud upon the customers of defendant." (Compl. ¶ 9.) As a result of his suspicions, plaintiff called John Reinhart, President of Maersk Line Limited in September 2003. Because Mr. Reinhart had no supervisory responsibility at APM, he advised plaintiff to contact someone else about his concerns. Plaintiff called Alan McAlmount, APM Terminals Director, about one month later and recounted his allegations.

In November 2003, plaintiff spoke to Assistant Marine Manager Jamie Mundy about an incident involving the vessel Horizon Producer. Mundy told LaForgia that Shift Manager Terence Dickerson had ordered Mundy to alter the vessel's arrival time, an action that might have resulted in substantial overcharge to the customer. LaForgia also spoke to Assistant Marine Manager Brian Kobza that month about another alleged incident in which Dickerson asked Kobza to take broken equipment from one vessel to another to indicate complications with unloading that might have had the effect of overcharging the customer.

-3-

**NOT FOR PUBLICATION**

On December 1, 2003, plaintiff called Phil Connors, Executive Vice President of Maersk, to report his allegations of fraud. Connors met with LaForgia the next day. On December 3, plaintiff met with Connors as well as Anthony Scioscia, President of APM, and Charles O'Connor, General Counsel of Maersk. As a result of the meetings, APM appointed John Hyde, Director of Corporate Security for Maersk and Patrick Burgoyne, Human Resources Director for APM, to conduct an investigation. Hyde and Burgoyne met with LaForgia at a hotel on December 8. It is undisputed that no additional interviews were conducted on December 8, 9, or 10. Other events of December 10 are hotly contested, however.

The following facts are undisputed: plaintiff reported for the 5:00 p.m. shift on December 10. Plaintiff contends that he was acting normally, but Peratt, accompanied by Dickerson, called plaintiff into Peratt's office and asked him if he had been drinking before coming to work. Plaintiff denied that he had been drinking before work but, in response to continued questioning, admitted that he might have had a glass of wine with lunch. After Peratt instructed plaintiff to return to work, plaintiff became "a little heated" before leaving. After plaintiff discussed the meeting with other co-workers, Peratt called plaintiff back to his office. Although the details of the conversation are in dispute, plaintiff admittedly told Peratt "to go fuck yourself" several times and Peratt told plaintiff that he viewed his conduct as insubordinate. Although the facts surrounding his departure are also disputed, plaintiff left work shortly thereafter.

On the evening of December 10, Peratt and his supervisor contacted Doreen DeMartino, Director of Employee Relations for Maersk and its subsidiaries, and requested permission to immediately terminate LaForgia. Because she was aware of an ongoing investigation, although

**NOT FOR PUBLICATION**

not its details, DeMartino did not immediately approve the termination.  After DeMartino conducted interviews of witnesses, but not of LaForgia, plaintiff was suspended, with pay, on December 11, 2003.  On January 12, 2004, he was terminated.

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  Id. at 248.  The moving party must show that if the evidentiary material of record was reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  At the summary judgment stage the Court's function is not to weigh the evidence and

**NOT FOR PUBLICATION**

determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

### DISCUSSION

Under New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-3,

> An employer shall not take any retaliatory action against an employee because the employee . . .
> c. Objects to, or refuses to participate in any activity, policy, or practice which the employee reasonably believes:
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .; [or]
> (2) is fraudulent or criminal . . . .

A plaintiff who brings an action under this section must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

Dwozonar v. McDevitt, 177 N.J. 451, 462 (2003). "These requirements must be liberally construed to effectuate CEPA's important social goals." Maimone v. City of Atlantic City, --- A.2d ---, 2006 WL 2035709, at *4 (N.J. July 20, 2006) (citing Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003)).

"A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation. In circumstantial evidence cases, New Jersey Courts apply the burden shifting framework of McDonnell Douglas Corp. v.

**NOT FOR PUBLICATION**

Green, 411 U.S. 792 (1973), and its progeny." Zaffuto v. Wal-Mart Stores, Inc., 130 Fed. App'x 566, 568 (3d Cir. 2005) (not precedential) (citing Romano v. Brown and Williamson Tobacco Corp., 284 N.J. Super. 543 (App. Div. 1995); Fleming v. Corr. Healthcare Solutions, Inc., 164 N.J. 90 (2000)). Under the McDonnell Douglas line of cases, once a prima facie case of retaliation under CEPA has been made,

> the burden of going forward shifts to the employer who must articulate a legitimate, nondiscriminatory reason for the adverse employment decision. If the employer does produce evidence showing a legitimate, nondiscriminatory reason for the discharge, the burden of production shifts back to the employee who must show that the employer's proffered explanation is incredible. At all times the burden of proof or risk of non-persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee.

Fleming, 164 N.J. at 100.

Here, the defendant concedes the second and third factors outlined in Dwozonar. With regard to the first factor,

> when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectionably reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. If the trial court so finds, the jury must then determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectionably reasonable.

Dwozonar, 177 N.J. at 462. "A plaintiff who brings a claim pursuant to N.J.S.A. 34:19-3c need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy. Instead, the plaintiff simply must show that he or she reasonably believe[d] that to be the case." Id. at 464 (internal citations and quotations omitted). Although the underlying facts are in dispute, the Court is satisfied that a jury could find, based on testimony in the record, that LaForgia reasonably believed that APM was fraudulently over-

**NOT FOR PUBLICATION**

billing its customers.[1] This leaves only the fourth Dwozonar factor for the Court's consideration.

To demonstrate the fourth element of a prima facie case of CEPA retaliation, plaintiff must establish a causal connection between his complaints and his termination. Plaintiff points to the following circumstantial evidence to establish such a connection: (1) knowledge of APM personnel and management of his complaints; (2) the temporal proximity between the investigation of his complaints and his termination; (3) that Peratt and Dickerson "set upon" him "without any reasonable explanation"; and (4) that the investigation of the December 10 altercation was "half-hearted."

Defendant counters, and cites cases for the proposition, that plaintiff cannot establish causal connection by mere subjective belief and speculation. Defendant further contends that plaintiff must present record evidence linking his termination to his protected activity, and argues that he has not done so. Defendant emphasizes that plaintiff has no evidence that Peratt or his supervisor, the individuals who requested plaintiff's immediate termination, were aware that plaintiff had made complaints. Finally, defendant argues that temporal proximity alone cannot establish a causal connection.

Addressing the issue at hand, the Third Circuit has said that:

> [c]ases in which the required causal link has been at issue have often focused on the temporal proximity between the employee's protected activity and the adverse employment action, because this is an obvious method by which a plaintiff can proffer circumstantial evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.' . . . It is important to emphasize

---

[1] As example, Assistant Marine Manager Brian Kobza testified that, by moving broken equipment from one ship to another, "you would be able to charge [the ship owner] for lost time that did not occur." (Rushfield Cert. Ex. C at 10.)

**NOT FOR PUBLICATION**

>that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn. The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177-78 (3d Cir. 1997) (quoting Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)). Here, the Court finds that the context-specific circumstantial evidence, viewed in the light most favorable to the plaintiff, is adequate to satisfy the causation element of the prima facie case. The highly-disputed events of December 10 took place only two days after LaForgia was interviewed pursuant to APM's investigation of his complaints. Although plaintiff has no direct evidence that Peratt or Dickerson knew of the investigation, plaintiff presents evidence that a number of APM employees knew of his actual complaints or of his threats to make such complaints. If the jury accepts plaintiff's characterization that he was "set upon" by Peratt and Dickerson on December 10 without reasonable explanation, coupled with the temporal proximity of the investigation and the knowledge held by numerous employees, it could reasonably infer that Peratt and Dickerson had knowledge of the complaints and that a causal connection exists between the complaints and the termination.[2] Viewing the facts in the light most favorable to plaintiff, he has established a prima facie case of CEPA retaliation.

---

[2] "It is clear that proof of knowledge by the employer of the employee's engaging in protected conduct is necessary; otherwise, the employer's action could not be 'because of' the conduct. However, direct proof of knowledge by the particular decision-maker is not necessary, because in many cases knowledge may be inferred . . . . This should suffice to establish the requisite knowledge at least for purposes of the prima facie case, even without further proof that the person actually making the adverse employment decision had such knowledge. Of course, if the trier of fact ultimately concludes that the actual decision-maker had no knowledge, the defendant should be exonerated." I Charles A. Sullivan, Michael J. Zimmer, and Richard F. Richards, Employment Discrimination § 7.3 (2d ed. 1988). See also Dey v. Colt Const. & Dev. Co., 28 F.3d 1446, 1458-59 (7th Cir. 1994) (noting that knowledge of the protected activity in a retaliatory discrimination case may be shown by circumstantial evidence and that "courts must be quite circumspect in evaluating the movant's factual averments" at the summary judgment stage when knowledge of internal conversations are within the exclusive control of the defendant.)

**NOT FOR PUBLICATION**

Anticipating the possibility that plaintiff might be able to establish a prima facie case, defendant argues that it had a legitimate, non-retaliatory reason for terminating plaintiff's employment. Taken in isolation, the Court would agree that LaForgia's "gross insubordination and inappropriate conduct in violation of company policy . . . in combination with [a] past disciplinary record" was a legitimate reason for his termination. Plaintiff certainly had an imperfect disciplinary record at APM and his admitted behavior on December 10 was clearly insubordinate. Unfortunately for defendant, however, the plaintiff is entitled to the favorable inferences on a motion for summary judgment and the events of December 10, as plaintiff characterizes them, are inextricably linked to the retaliatory motive of the defendant. If the jury accepts that Peratt and Dickerson targeted plaintiff for his whistle-blowing activity and set the events in motion that were the "but for" cause of his termination, it could reasonably find that the proffered reason for the termination was pretextual. While plaintiff may face an uphill battle in convincing a jury of his version of the facts and in eliciting his desired inferences, he has produced adequate evidence for the jury to consider.

**CONCLUSION**

For the preceding reasons, defendant's motion for summary judgment is denied.

**s/William H. Walls**
United States Senior District Judge

-11-

**NOT FOR PUBLICATION**

**Appearances**

Mark C. Rushfield, Esq.
O.P.E.I.U. Local 32
2013 Morris Avenue
Union, NJ 07083
    Attorney for Plaintiff

Rene M. Johnson
Eric S. Lasky
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540
    Attorneys for Defendant